**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| TERRI K. OLIVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:10-cv-00821 |
| | § | |
| TEXAS HEALTH AND HUMAN | § | |
| SERVICES COMMISSION, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND,**
**JURY DEMAND**

TO THE HONORABLE COURT: Plaintiff, Terri K. Oliver, files her Original Complaint and

Jury Demand.

### A.      Nature of Action

1.      This is an action to recover damages, statutory, and equitable relief resulting from

Defendant's violations of the Americans With Disabilities Act, 42 USC §12101, *et seq.* and the

Family and Medical Leave Act, 29 USC 2601, *et seq.*

### B.   Jurisdiction and Venue

2.      Prior to filing this action, Plaintiff timely filed her Charge of Discrimination with

the Equal Employment Opportunity Commission (EEOC). Plaintiff has received her notice of the

right to sue, and this suit is timely filed.

3.      Venue is proper in the Austin Division of the Western District of Texas.

### C.  Parties

4.      Plaintiff is a former employee of Defendant. Her employment relationship with Defendant was terminated by defendant's discriminatory and retaliatory action on or about April 16, 2009.

5.      Defendant Texas Health and Human Services Commission is a state agency doing business in the State of Texas. Service of process may be delivered to its Executive Commissioner, Thomas Suehs at the Texas Health and Human Services Commission, Brown-Heatly Building, 4900 North Lamar Blvd., Austin, Texas 78751. Defendant is an employer within the meaning of 42 USC § 2000e(b), and employees for than 500 employees.

### D.  Relevant Facts

6.      Plaintiff worked for Defendant as Associate Counsel, Attorney IV in the Office of Inspector General, Texas Health and Human Services Commission. Plaintiff consistently performed her duties faithfully and competently.

7.      Plaintiff began experiencing health problems in November 25, 2008 and was subsequently treated by physicians for much of the duration of her employment with Defendant. At Defendant's request, Plaintiff supplied all pertinent medical records and reports to Defendant.

8.      On November 30, 2008, Plaintiff requested an appointment with her second-line supervisor, Karen Nelson, to give a confidential report about developments in her personal health and her need to be in hospital for testing. Plaintiff's request was never honored.

9.      On December 1, 2008, Plaintiff could not gain access to the building with her employee ID card. She reported the lockout to Karen Nelson and asked for work to do while at the hospital. Thereafter, her work went uneventfully until December 5, 2008 when she became ill and notified Barbara Jordan she would be leaving work early.

10.     On December 26, 2008, Plaintiff was sent to Austin Radiological Associates for diagnostic imaging studies. At that time, the diagnoses were migraines, balance problems and falls. She was seen at Westlake Medical Center on December 27, 2008 for vasovagal syncopal episodes with migraine headaches and atypical chest pain.

11.     On December 30, 2008, Plaintiff saw her personal physician, Dr. Steven Margolin. She also wrote an email to Karen Nelson, which described her state of health and self-assessment. The next day, she received notification of Vacation Leave Termination, and that she was being placed in a Leave without Pay status from the agency's Human Resources department. On January 1, 2009, Plaintiff put her doctor's note in Lisa Barrigan's chair, sent an email that addressed her time sheet and leave issues to Karen Nelson, and requested a personal meeting with Karen Nelson to discuss the agency's leave policy. Ms. Nelson did not honor her request.

12.     On January 7, 2009, Plaintiff notified Barbara Jordan of doctor appointments in the coming week. On January 15 and 16, 2009, Plaintiff was seen at Austin Radiological Associated for diagnostic imaging studies relating to her headaches and syncopal episodes of two (2) months duration. On January 20, 2009, she had an EEG study. She informed her employer of these developments.

13.     On January 21, 2009, Plaintiff had cardiac incident at work, passed out, and was taken to the hospital by ambulance. Subsequently, she had a cardiac surgical procedure and a cardiac stent placed in her right coronary artery. On January 23, 2009, she received notification of various leave approvals and Leave Without Pay (LWOP) determinations from the agency's Human Resources department (HR). On January 29, 2009, she received notice from HR that a Transfer Performance Plan was due in 30 days.

14.     On February 3, 2009, Karen Nelson informed Plaintiff that her new supervisor, Fread Houston would be her "single point of contact." The next day, February 4, 2009, she began receiving what would prove to be a series of hostile and uncooperative emails from Donna Bragdon of the H&HSC EEO office. She also received an email from Karen Nelson asking her to explain health events of the previous months and concomitant absences due to doctors' appointments. She was required to respond to each, with supporting documentation, while recovering from her cardiac event and corresponding surgery. She also had an email exchange with Fread Houston regarding a February 6, 2009 meeting to retrieve physician report documents.

15.     On February 10, 2009, Plaintiff had a cardiac work up at Seton Hospital. A heart catheterization, ventriculography, and coronary arteriogram showed coronary artery stenosis and first diagonal left anterior descending (LAD) coronary artery lesion, both of which were treated with cutting balloon atherotomy. She informed her employer of this development.

16.     On February12, 2009, Plaintiff received an email from Fread Houston which stated: "We are in receipt of the electronic information you emailed yesterday and the hard copies you had delivered this morning. These documents are accepted as your formal response to the performance issues laid out in Ms. Nelson's memorandum (dated January 27, 2009).

17.     On February 24, 2009, Plaintiff received and delivered to her employer an off work order from Dr. Aubrechtova, which stated: "Patient needs recovery period for rehabilitation after heart emergency and repeated loss of consciousness."

18.     On February 27, 2009, Plaintiff received notice from Fread Houston, which informed her she would not be granted skeleton holiday leave, but instead be put on LWOP status. This was a reversal of his earlier advice to her, couched in the following terms,

"Unfortunately, after reviewing the leave policy it appears that leave that has accrued during emergency leave cannot be used until the employee returns to regular duty." She emailed back to Mr. Houston, informing him, "Despite the predetermined schedule for my return, I will be taking a sick day today."

19.     During the period March 2-5, 2009, Plaintiff sent daily email notifications to Fread Houston, calling in sick. On March 6, 2009, Donna Bragdon acknowledged, "I have received your medical information."

20.     On March 9, 2009, Fread Houston confirmed receipt of a medical report from Dr. Margolin, and her LWOP status since February 27, 2009. She requested Donna Bragdon to identify an ombudsman not connected with OIG to assist her with work scheduling and assignment issues. She also began seeking early return to work orders from her physicians due to the financial stress resulting from being placed in LWOP status. She confirmed delivery of medical and FMLA information to Fread Houston and emailed Mr. Houston, "I am still out on leave due to illness."

21.     On March 10, 2009, Plaintiff called in sick to Fread Houston. Donna Bragdon confirmed receipt of her medical information from Dr. Margolin on March 6, and of her FMLA information from Fread Houston. She challenged Ms. Bragdon's denial of receiving a medical report from Dr. Hana Aubrechtova, because she had spoken to the doctor, who claimed to have seen a confirmation of fax delivery to Ms. Bragdon's fax machine.

22.     On March 11 and 12, 2009, Plaintiff called in sick to Fread Houston. Donna Bragdon informed her that her request for reasonable accommodation, made under the Americans with Disabilities Act had been closed. Fread Houston wrote that HHSC HR will make

the final determination as to how FMLA will be applied. On March 13, 2009, she called in sick to Fread Houston.

23.     Each day of the week of March 16-20, 2009, Plaintiff called in sick to Fread Houston. On occasion he would reply with an acknowledgement and thanks. On Friday, March 20, 2009, she received return to work orders from her physicians, and emailed them to Fread Houston.

24.     On March 23, 2009, Plaintiff returned to work at 7:00 a.m. She worked at her desk for approximately 2 hours when security guards escorted her from the building. Later, she received an email from Fread Houston, which stated, "Your appearance today was a bit unexpected."

25.     On March 25, 2009, Plaintiff notified Fread Houston she would be in cardiac rehabilitation in the morning, and awaiting instructions. He responded that he had not received a determination regarding her release to return to work.

26.     On March 30, 2009, Fread Houston sent Plaintiff a memorandum granting emergency leave starting March 23, 2009, and continuing "until a determination can be made regarding your medical releases." Donna Bragdon sought confirmation she had been released to return to work. She sent an email to Fread Houston to remind him, "It has been a week since my return to work and my security escort out of the building pending the evaluation of my medical releases."

27.     On April 1, 2009, Donna Bragdon emailed that she was reviewing, "your reasonable accommodation." In a separate email Ms. Bragdon stated, "I still have your accommodation open as I received notice that you returned to work on March 23, 2009. I understand you are not at work at this time but received information that you were released to

return to work." Plaintiff confirmed to Ms. Bragdon, "My physicians released me to work as of 23 March 2009 without physical restrictions." She also sent a formal letter to Ms. Bragdon confirming her release to return to work and asking about H&HSC personnel questioning her physicians about the releases.

28.     On April 3, 2009, Fread Houston wrote, "When I receive confirmation that your medical releases have been approved regarding your ability to return to work I will let you know." On the same day, Wilbur Williams of the Human Resources department reported he had contacted Dr. Margolin's office, which confirmed Plaintiff was "Released to return to work without any medical/physical restrictions effective March 23, 2009." Mr. Williams reported, "I have conveyed this information to your management team." Plaintiff confirmed to Wilbur Williams, "You told me that you had confirmed the veracity of my medical releases."

29.     On April 8, 2009, Donna Bragdon wrote, "Have you returned to work and do you need to explore any reasonable accommodations?" On April 10, 2009, Plaintiff again confirmed to Ms. Bragdon, "I was released to return to work 23 March without restriction. I returned to work at my usual station. I worked for two (2) hours. I was then escorted out by two (2) security men, after they took my physicians' releases to be reviewed by "legal."

30.     On April 14, 2009, Donna Bragdon acknowledged her understanding that Plaintiff was released to return to work without restrictions, and that she had been placed on emergency leave pending verification of her medical releases. Plaintiff replied to Ms. Bragdon, "I wish only to return to work. I am able and ready." She also emailed to Fread Houston, "I received this email [April 3, 2009] from Mr. Williams about four (4) hours before you emailed me that you had not been contacted about my releases." She also wrote to Wilbur Williams, "My supervisor,

Mr. Houston, has yet to contact me with the information that you have contacted him, or his supervisor."

31.     On April 15, 2009, Donna Bragdon wrote, "I have submitted my closure of your reasonable accommodation for review and approval." Plaintiff replied,

> "I want to return to work. I have been released to return to work. A letter of termination was hand delivered to my home. The reason HHSC gave for my termination was that I was not suited for the position. From the date of my cardiac event until the date of my termination, I was not allowed to exhaust my accrued vacation or sick leave, so that I could apply for temporary disability. Nor did HHSC ever pay my for my accrued vacation leave, as required by state law."

32.     On April 16, 2009, Fread Houston advised Plaintiff that her personal items could be picked up at the front desk. On the same day, she received a hand delivered notice of termination signed by Karen Nelson.

33.     On April 23, 2009, Donna Bragdon confirmed closing Plaintiff's reasonable accommodation request as per her April 15, 2009 email.

34.     On May 1, 2009, there was an email exchange with Fread Houston regarding COBRA election documents, and another exchange with Donna Bragdon regarding Reasonable Accommodation Closure."

## E. Legal Principles

35.     Plaintiff states a cause of action for disability discrimination in violation of 42 USC §12101, *et seq*. Specifically, plaintiff suffers from a condition or conditions that substantially limits one or more major life activities, but that would not have prevented her from performing the duties of her job, if she had been properly accommodated as required by law. Defendant steadfastly failed and refused to engage in the interactive process required by law. Instead, Plaintiff was harassed, belittled, ostracized, and ultimately terminated because of her

medical conditions. Plaintiff sought reasonable accommodation and got nothing but a bureaucratic run around.

36.     In the alternative, Plaintiff was harassed, belittled, ostracized, and ultimately terminated because her employer regarded her as disabled.

37.     Plaintiff states a cause of action for retaliation in violation of 42 USC §12203(a).

38.     Plaintiff states a cause of action for violation of rights under the FMLA, 29 USC §2601, *et seq*. Defendant has interfered with, restrained, and denied Plaintiff's exercise of rights and her attempt to exercise rights under FMLA, and has discharged and otherwise discriminated against Plaintiff for opposing its practices in violation of the act. Plaintiff sues pursuant to the provision of 29 USC §2617.

39.     Plaintiff states a cause of action for retaliation in violation of 29 USC §2615(a)(2)(b).

### F. Remedies & Damages

40.     Plaintiff sues to recover her statutory and equitable remedies available under, the ADA and FMLA including, but not limited to reinstatement, injunctive relief, equitable pay grade enhancement, court costs, compensatory damages, punitive damages, and attorney fees.

### G. Jury Demand

41.     Plaintiff demands a trial by jury.

### H. Prayer

42.     Premises considered, Plaintiff prays that Defendant be cited to appear and answer herein in the terms of the law; that upon notice and hearing Plaintiff be awarded temporary injunctive relief pursuant to 42 USC §12117 and 29 USC §2617; and that on final hearing she be awarded judgment of and from Defendant for the full amount of her damages, statutory, and

equitable remedies, past and future, together with her costs, and attorney fees; and for such other and further relief as the Court may deem proper.

Respectfully submitted,

JUDGE, KOSTURA & PUTMAN, P.C.
The Commissioners House at Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746
Telephone:512/328-9099
Facsimile: 512/328-4132

By: _____/s/ John Judge_____
        John Judge
        State Bar No. 11044500

**ATTORNEY FOR PLAINTIFF**